## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRIYA VERMA, on behalf of herself and all others similarly situated, | ) ) ) Civil Action No.: |
| Plaintiff, | ) ) ) |
| v. | ) **CLASS AND COLLECTIVE** ) **ACTION COMPLAINT** ) |
| 3001 CASTOR, INC., d/b/a THE PENTHOUSE CLUB and/or THE PENTHOUSE CLUB @ PHILLY; ABCDE PENNSYLVANIA MANAGEMENT, LLC  and DOE DEFENDANTS 1-10, | ) ) **JURY TRIAL DEMANDED** ) ) ) ) |
| Defendants. | |

Plaintiff Priya Verma ("Verma" or "Plaintiff"), individually and on behalf of all similarly situated employees, brings this Class/Collective action lawsuit against Defendants 3001 Castor Inc., d/b/a The Penthouse Club and/or The Penthouse Club @ Philly,[1] ABCDE Pennsylvania Management, LLC  and Doe Defendants 1-10 (collectively "Penthouse Club" or "Defendant"), seeking to recover for Defendant's violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et. seq.* (the "FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. § 260.1, *et seq.* and common law.  Plaintiff, on behalf of herself and all others similarly situated, allege as follows:

---

[1] In corporate filings with the Pennsylvania Department of State, Defendant 3001 Castor Inc. is registered as the owner of two fictitious names, Penthouse Club @ Philly and The Penthouse Club.  Further, on its website, Defendant identifies itself as the Penthouse Club Philadelphia.  Lastly, in its job application, Defendant also identifies itself as "Penthouse Club Philadelphia."

## INTRODUCTION

1.     As explained herein, under applicable employment laws all employees are entitled to premium overtime compensation for all hours worked in excess of forty in a given workweek, unless the employee is determined to be exempt.  However, Defendant (as defined herein) improperly classified Plaintiff and other exotic entertainers ("Dancers") as "independent contractors."  Consequently, Defendant failed to pay Plaintiff and class members at least the applicable minimum wage.  In addition, Defendant improperly collects a portion of the tips Plaintiff and other Dancers receive from customers.  Further, Defendant regularly required Plaintiff and class members to work in excess of forty hours per week, and failed to pay them premium overtime compensation as required by applicable employment laws.  As set forth herein, such conduct is in violation of applicable state and federal wage and hour laws.

2.     Dancers in Philadelphia, including Plaintiff and her current and former co-workers, work in an "unorganized" industry where many workers are "disenfranchised" by the wide disparities in bargaining power between workers and club owners.  *See* Holly Wilmet, *Naked Feminism: The Unionization of the Adult Entertainment Industry*, 7 Am. U.J. Gender Soc. Pol'y & L 465, 466 (1999).

3.     Accordingly, adult entertainment clubs such as Defendant, located at 3001 Castor Avenue, Philadelphia, Pennsylvania, are well-positioned to take advantage of Dancers and routinely deny them basic workplace rights.

4.     Over the past two decades, the Department of Labor ("DOL") and courts across the country have recognized that Dancers are employees, not independent contractors, and thus entitled to protection under various state and federal wage and hour laws.

5.     Despite these significant strides, adult night clubs in Philadelphia and across the country still routinely deny Dancers the basic protections they are accorded under state and

federal law.  Indeed, the Penthouse Club is no exception.  As set forth herein, it regularly deprives Dancers of their rights under federal law, as well as the laws of the Commonwealth of Pennsylvania.  Plaintiff brings this lawsuit to address these improper pay practices.

## SUMMARY OF CLAIMS

6.      Plaintiff brings this action as a collective action to recover unpaid wages, pursuant to the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA" or the "Act").

7.      In particular, Plaintiff brings this suit on behalf of the following similarly situated persons:

> All current and former Dancers who have worked for Defendant within the statutory period covered by this Complaint, and elect to opt-in to this action pursuant to the FLSA, 29 U.S.C. § 216(b) ("Nationwide Collective Class").

8.      In addition, Plaintiff also brings this action as a state-wide class action to recover unpaid wages, including inappropriately withheld tips, pursuant to the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), the Pennsylvania Wage Payment and Collection Law ("WPCL")and common law (the "PA State Laws").

9.      Specifically, Plaintiff brings this suit on behalf of a class of similarly situated persons composed of:

> All current and former Dancers who have worked for Defendant in the Commonwealth of Pennsylvania during the statutory period covered by this Complaint (the "PA Class").

10.     Plaintiff allege on behalf of the Nationwide Collective Class that they are: (i) entitled to unpaid minimum wages from Defendant for hours worked for which Defendant failed to pay the mandatory minimum wage, as required by law; (ii) entitled to unpaid overtime wages

for all hours worked in excess of forty in a work week; and (iii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 *et seq.*

11.     Plaintiff allege on behalf of the PA Class that Defendant violated the PA State Laws by, *inter alia*: (i) failing to pay them the appropriate minimum wages for all hours worked; (ii) improperly denying them overtime wages for all hours worked in excess of forty hours in a work week; and (iii) inappropriately withholding and/or deducting unlawful amounts from the gratuities of the PA Class.

12.     Plaintiff is unaware of the names and the capacities of those defendants sued as DOES 1 through 10 but will seek leave to amend this Complaint once their identities become known to Plaintiff. Upon information and belief, Plaintiff alleges that at all relevant times each defendant was the officer, director, employee, agent, representative, alter ego, or co-conspirator of each of the other defendants.  In engaging in the alleged conduct herein, defendants acted in the course, scope of, and in furtherance of the aforementioned relationship.  Accordingly, unless otherwise specified herein, Plaintiff will refer to all defendants collectively as "Defendant" and each allegation pertains to each of the defendants.

## PARTIES

13.     Plaintiff Priya Verma ("Verma" or "Plaintiff") is a resident of the Commonwealth of Pennsylvania who was employed by Defendant as a "Dancer" in their Castor Avenue location from in or about August 2009 through October 2009 and then from August 2012 through present. While employed by Defendant, Plaintiff was improperly classified as an independent contractor and, consequently, Defendant failed to compensate Plaintiff properly for all hours worked.

14.     Plaintiff has consented in writing to be Plaintiff in this action and have filed their executed Consent To Sue forms.

15.     Defendant 3001 Castor, Inc. is a Pennsylvania corporation that operates an adult night club located at 3001 Castor Avenue, Philadelphia, Pennsylvania under the names of The Penthouse Club, Penthouse Club @ Philly and/or The Penthouse Club Philadelphia.  Defendant 3001 Castor Inc. employed Plaintiff as a Dancer.  Upon information and belief, at all relevant times, the Penthouse Club's annual gross volume of sales made or business done was not less than $500,000.00.

16.     Defendant ABCDE Pennsylvania Management, LLC is a Pennsylvania limited liability company with its registered office address located 3001 Caster Ave, Philadelphia, PA 19134.

17.     At all relevant times Defendant has transacted business, including the employment of Dancers, within the Commonwealth of Pennsylvania, including within this district.

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 201 *et seq*.

19.     This Court also has original jurisdiction over all claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). This is a putative class action whereby: (i) the proposed Rule 23 class consists of over 100 or more members; (ii) at least some of the members of the proposed class have a different citizenship from Defendant; and (iii) the claims of the proposed Rule 23 class exceed $5,000,000.00 in the aggregate.

20.     Further, this Court also has supplemental jurisdiction over Plaintiff' state law claims pursuant to 28 U.S.C. § 1367 because those claims derive from a common nucleus of operative facts.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(ii) as a substantial part of the acts or omissions giving rise to the claims alleged herein occurred within this judicial district, and Defendant is subject to personal jurisdiction in this district..

22.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

### FACTUAL ALLEGATIONS

23.     The crux of the FLSA and PA State Laws is, *inter alia*,: (i) that all employees are entitled to be paid mandated minimum wages for all hours worked; (ii) that all employees are entitled to premium overtime compensation for all hours worked in excess of 40 hours a week; and (iii) that all gratuities earned by an employee are the property of the employee.

24.     Contrary to these basic protections, Defendant improperly classified its Dancers, including Plaintiff, as "independent contractors" despite Defendant's near total control over them.   Consequently, Plaintiff and the members of the Classes were:   (i) deprived of the mandated minimum wage for all hours they worked; (ii) deprived of premium overtime compensation for all hours worked in excess of 40 per workweek; (iii) forced to improperly share a percentage of their gratuities with Defendant; and (iv) forced to reimburse Defendant for its ordinary business expenses.

25.     Plaintiff and the members of the Classes are, or were, Dancers who worked at Defendant's business location at 3001 Castor Avenue.

26.     The Penthouse Club is operated by Defendant under uniform policies applicable to all the members of the Classes.   Through these policies and procedures, Defendant maintains significant supervision and control over Plaintiff and members of Classes.

27.     Notwithstanding Defendant's classification of Dancers as independent contractors, as set forth below, due to the amount of control Defendant has over its Dancers, Dancers are legally Defendant's employees.

<u>**Hiring, Firing, and Scheduling**</u>

28.     An individual wishing to perform at the Penthouse Club can elect to be treated as either a "Freelancer" or "Entertainer."   Typically, a "Freelancer" is a visiting dancer who typically works at another club not within Philadelphia.[2]   In contrast, Defendant prohibits "Entertainers" (aka Dancers) from working at any other club while performing at Defendant's location.

29.     Defendant has the power to hire and fire Dancers and has rules governing the conditions under which Dancers work.

30.     A Dancer is required to complete their schedule with the "House Mom" (the individual who assists the Dancers with feminine issues) by Thursday of each week.

31.     The shifts are limited to the following times: (i) "Day Shift" lasting from noon to 6pm, (ii) "Mid Shift" lasting from 3pm to 9pm, (iii) "Preferred Shift" lasting from 6pm to midnight, (iv) "Premium Shift" lasting from 8pm to 2am, and (v) "Power Shift" lasting from 10pm to 2am.

32.     Defendant requires Dancers to work a minimum of four (4) shifts per week.  If a Dancer attempts to complete a schedule that contains less than four shifts, they are required to add another shift before their schedule will be approved.  Indeed, Plaintiff attempted to complete a shift schedule indicating that she only wished to perform Friday, Saturday, and Sunday during one week.  She was told to add another day.

---

[2] Freelancers are required to pay higher house fees (described herein) and are not entitled to such perks as free drinks or a catered breakfast (for those dancers working the early shift).

33.     In addition, Defendant requires each Dancer to work two Saturdays and/or two Sundays per month.

34.     Defendant's scheduling policy also requires that all Dancers stay until the end of their shift.   Accordingly, and unlike true independent contractors, Defendant's Dancers are required to work a minimum number of hours per week.

35.     If a Dancer misses a scheduled shift, they are required to work a make-up shift or pay a fine.   Defendant requires that the make-up shift be scheduled immediately.   Moreover, Defendant requires that a missed shift be made up on either Monday or Tuesday, typically the two slowest days for the club.

36.     Further, a Dancer is required to check in with the podium host and House Mom as soon as they arrive for their shift.   Indeed, there is a sign-in book that the House Mom keeps.

37.     Finally, Defendant can determine that a Dancer is "on a break" and not permitted to perform at the Penthouse Club until contacted by Defendant.

38.     Accordingly, unlike true independent contractors, Dancers are required to work (i) a set number of hours per week, (ii) a set number of days per week, (iii) and comport their appearance to Defendant's requirements even though such requirements have no bearing on the performance of Dancers' underlying job duties.

**<u>House Fees & Fines</u>**

39.     Rather than pay its Dancers the applicable minimum wage (either the applicable state minimum wage or the federal minimum wage, whichever is higher), Defendant classified its Dancers as independent contractors and required its Dancers to pay Defendant in order to work at Defendant's establishment.   Consequently, Defendant does not compensate Dancers in an amount at least equal to the mandated minimum wage for each hour worked during their shift.

8

40.     Further, Defendant required its Dancers, including Plaintiff and members of the Classes, to pay "House Fees" for each shift that Dancers work.  These fees are posted in the dressing room, along with other fines described herein.

41.     Typically, the House Fees range from $25 per shift to $75 per shift.  If a Dancer is late for their scheduled shift, Defendant assesses a $10 "late fee" for every 30 minutes a Dancer is late.[3]  Incredibly, even if a Dancer notifies management in advance that they will be late, it is a posted policy that the late fee "*may be waived by management*" (emphasis in original).  Hence, it is totally within management's discretion whether to apply a late fee or not to a Dancer.

42.     Importantly, a Dancer must pay all fees every night she works regardless of the amount of tips she receives.  Accordingly, a Dancer must pay the fees even if that means borrowing money from another Dancer or using the club's ATM machine.

43.     In addition to these fees, the Penthouse Club routinely issues fines to its Dancers for failing to comply with Defendant's policies and procedures.  Fines range from $25 to $100 depending on the infraction.

44.     Indeed, Defendant posts at least ten (10) "Enforced Fines" that the Dancers are subjected to.  They include: (i) leaving stage without waiting for their replacement ($25 fine), (ii) over 30 seconds late for stage set ($25 fine), (iii) chewing gum while on stage ($25 fine), (iv) talking while on stage ($25 fine), (v) failing to appear for a scheduled shift ($25 fine), (vi) late paying house fees ($25 fine), (vii) entering the stage from the floor rather than from the staircase near the DJ booth ($25 fine), (viii) using cell phones or other electronic devices while on stage or on the floor ($50 fine),  (ix) smoking in the building ($100 fine), and (x) leaving early without management approval ($100 fine).

---

[3] Upon information and belief, a Dancer who elects to work the "Power Shift," which lasts from 10pm to 2am, is still charged a late fee because the Dancer did not work a 6 hour shift (*i.e.,* the Dancer did not come in at 8pm and work the "Premium Shift").

45.     Further, Dancers are subjected to fines for their appearance.  For example, if a Dancer leaves her hair "up" while working, the Dancer can be subjected to a $35 fine.

46.     Further, if a Dancer wishes to engage in certain behavior, they must pay Defendant a set amount.  For example, if a Dancer wishes to leave before the end of her scheduled shift, she is required to pay Defendant $100.  Likewise, if a Dancer does not want to appear on stage for her entire shift (known as a "stage skip"), she is required to pay Defendant $150.  Indeed, if a Dancer is thrown out of the Penthouse Club, Defendant requires that Dancer to pay a $500 fee in order to continue performing at the club.

47.     Importantly, Dancers are not permitted to perform at the Penthouse Club if they have any outstanding fines.  Indeed, Defendant maintains a list of all Dancers and the current fines owed.

48.     If a Dancer does not pay within a set number of days, Defendant imposes a penalty upon that Dancer.  For example, Plaintiff was notified that she had outstanding fines of $50 as of Monday and that if she did not pay that amount in full by 8pm on the Thursday, the fine would double.

**Tip Retention & Mandatory Tip Outs**

49.     It is black letter law that tips received by an employee are the employee's tips and an employer has no ownership interest in said tips.  Indeed, according to the DOL's Regulations, "[t]ips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA."  29 C.F.R. § 531.52.

50.     Despite this plain fact, Defendant unlawfully retained a portion of tips Dancers received from Defendant's customers.

51.     Moreover, Defendant also mandates the fees a Dancer may charge customers for her services.   By way of example, Defendant maintains a policy establishing the amount a Dancer is required to charge for private performances.

52.     Indeed, the DJ and signage on the premises notifies patrons of the cost for a "lap dance" and "sky box" private dance, thereby eliminating the possibility that a Dancer can set their own rate.   Notably, the DJ gives no indication that Defendant retains a portion of the "lap dance" or "sky box" charges.

53.     For example, Defendant mandates that a "lap dance" for one song is $30, of which a Dancer must pay Defendant $10, and that a "sky box" private dance for 30 minutes is $300, of which a Dancer must pay Defendant $150.

54.     As a result, customers who believe that they are tipping Dancers a certain amount are actually tipping them less, due to the aforementioned deductions taken by Defendant.

55.     As set forth below, these deductions are in contravention of applicable law.

56.     In addition, Defendant also subjects Dancers to mandatory tip-outs.   That is, Dancers are required to tip certain of Defendant's employees.   Importantly, the individuals that Defendant requires its Dancers to share their tips with do not provide customer service.

57.     Upon information and belief, Defendant uses these tips paid by dancers to offset its ordinary business expenses.   Stated another way, Defendant requires Dancers to tip these individuals so that the Penthouse Club can then reduce its labor costs by having the Dancers supplement the compensation Defendant pays its other employees.

58.     The number of individuals Dancers are required to tip is numerous and the tip amount is significant.   Defendant has a *mandatory* tip out policy whereby Dancers must each tip

a minimum of (i) $10 to the House Mom, (ii) $15 to the club's DJ, and (iii) $5 to the Podium Host. The aforementioned amounts are the required minimum tip.

59.     Incredibly, Plaintiff was required to pay the House Mom minimum tip on a night when the House Mom left early and was not available for most of Plaintiff's shift.

60.     In addition, Dancers are also required to tip security personnel and the valet attendant. Notably, Dancers are charged $6 for valet service regardless of whether they park their car with the valet. Accordingly, Dancers are required to tip Defendant a significant amount for each shift worked.

61.     For example, on one Friday evening shift, Plaintiff was required to pay the following fees: (i) $25 house fee, (ii) $15 DJ fee, (iii) $5 security fee, (iv) $10 House Mom, (v) $5 Podium Host, and (vi) $6 valet. In total, Plaintiff was required to pay $66 to Defendant to cover various business expenses.

62.     As a result of the mandatory house fees, required tip-outs, and assessed fines, Dancers sometimes receive little to no actual compensation despite hours of work. Indeed, after paying all fees, fines, and tip-outs, Plaintiff's take home compensation one evening was $1.00.

## Additional Control

63.     Prior to performing for the first time at the Penthouse Club, Defendant can instruct a Dancer to change their physical appearance. Indeed, Defendant recently installed a salon on premises and has directed certain Dancers to go to the salon to have certain work done.

64.     Further, if during their time at the Penthouse Club the Dancer's look changes, Defendant can require a Dancer to go to the salon on premises or otherwise adjust their look. Indeed, during her time at Penthouse Club, Plaintiff was directed by Defendant's management personnel to either wear a wig or get hair extensions to cover some thinning hair.

65.     The Penthouse Club requires Dancers to wear certain types of clothes, including a "dancer's G-string" and shoes of a minimum heel length.  If a Dancer does not have such apparel, they are required to purchase their uniforms from the House Mom, and Defendant does not reimburse them for the cost of their uniforms.  In addition, Defendant does not pay for the cost of laundering or maintaining these unique uniforms.

66.     Further, Defendant requires every Dancer to perform the club's signature motorcycle dance – where two performers are placed onto two motorcycles and then elevated high above the crowd – at least once during their tenure at the club.

67.     Exemplifying the degree of control Defendant has over Plaintiff and members of the Classes, Dancers are not permitted to select their own music.

68.     In short, Defendant maintains significant supervision and control over Plaintiff and members of Classes and sets the rules governing the conditions under which Dancers work.

69.     Such rules include: (i) the minimum number of days a Dancer must work, and at which time, (ii) that Dancers are required to make up missed shifts within a certain period of time, including limiting the days in which a Dancer can make up a missed shift (iii) that Dancers must sign in upon arrival for work, (iv) the minimum number of hours a Dancer must work in a given day, (v) that Dancers must wear certain uniforms and that if they do not have such uniforms, they must purchase the uniform from Defendant, (vi) exert control over the Dancers appearance, including mandating they visit a certain salon, (vii) dance on stage for a set number of songs and perform at certain stages, as well as the order in which the stages must be danced, (viii) which music a Dancer may perform to (in other words, a Dancer cannot select their own music), and (ix) share tips with other employees, including mandating which employees must be tipped and the minimum amount of the tip.

70.     In addition, Defendant prohibits its Dancers from doing a number of activities while on duty.  Such prohibitions include: (i) leaving the stage until the end of the Dancer's routine unless excused by the DJ, (ii) changing into street clothes before the end of the Dancer's shift, (iii) wearing certain types of platform shoes and/or certain kinds of underwear, (iv) chewing gum while at work, (v) using profane language with a customer, (vi) discussing the terms of a Dancer's compensation with a customer (*i.e.,* what portion of a "lap dance" a Dancer keeps), and (vii) discussing the club's operating procedures with a customer (*i.e.,* any fee split between Dancer and Defendant).

71.     The extent of Defendant's control over its Dancers is demonstrated by the fact that Dancers were prohibited from performing at any competing clubs during the same period they worked at the Penthouse Club.  Further, Defendant determined the rate and method of payment Dancers received, including but not limited to the percentage of tips that the Penthouse Club would retain and the fact that Dancers would not receive any wages while working at the club.

72.     Plaintiff typically worked a shift from on or about 8:00 p.m. to 2:00 a.m.  Dancers routinely worked hours in excess of 40 in a week.  Indeed, during the Class Period, Plaintiff worked every day of the week during a particularly hectic week.

73.     Defendant has been unjustly enriched to the detriment of the Classes by:  (i) requiring Dancers to pay money out of their tips to pay for the ordinary business expenses of Defendant; (ii) requiring Dancers to forfeit a portion of their tips to Defendant; (iii) paying Dancers less than the mandated minimum wage while failing to comply with the requirements for doing so; and (v) failing to pay Dancers premium overtime compensation for all hours worked in excess of forty in a work week.

74.     Further evidencing Defendant's unjust enrichment, when Plaintiff and members of the Classes appear outside the club on Defendant's behalf, they receive no remuneration for their time.  For example, last year, Plaintiff appeared at a Philadelphia Phillies baseball game wearing a uniform supplied by Defendant.  She was not compensated for this time.

75.     In addition, Defendant does not compensate Plaintiff or other members of the Classes for Defendant's use of the Dancers' image on Defendant's website and/or Facebook page.

76.     At all times relevant to this Complaint, Plaintiff believed she was an employee of Defendant.  Indeed, Plaintiff made appearances at public events representing herself as a Dancer of Defendant and advertising Defendant's business.

77.     Evidence generally reflecting the number of uncompensated hours worked by Dancers in the possession of Defendant.

78.     While Plaintiff is unable to state at this time the exact amount owed to the Classes, Plaintiff believes that such information will become available during the course of discovery.  Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer.  *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## CLASS & COLLECTIVE ACTION ALLEGATIONS

79.     Plaintiff brings this action on behalf of the Nationwide Collective Class as a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 207 and 216(b).  Plaintiff also brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the PA Class for claims under the PA State Laws.

80.     The claims under the FLSA may be pursued by those who opt-in to this case pursuant to 29 U.S.C. §216(b).  The claims brought pursuant to the PA State Laws may be pursued by all similarly-situated persons who do not opt out of the PA Class pursuant to Fed.R.Civ.P. 23.

81.     Upon information and belief, the members of each of the Classes are so numerous that joinder of all members is impracticable.  While the exact number of the members of these Classes is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are over a hundred individuals in each of the Classes.

82.     Defendant has acted or has refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief with respect to the Classes as a whole, appropriate.

83.     The claims of Plaintiff are typical of the claims of the Classes she seeks to represent.  Plaintiff and the members of the Classes work or have worked for Defendant and were subject to the same compensation policies and practices, including not being compensated for all hours worked.

84.     Common questions of law and fact exist as to the Classes that predominate over any questions only affecting them individually and include, but are not limited to, the following:

        (a)     whether Plaintiff and Dancers were improperly classified as independent contractors by Defendant;

        (b)     whether Defendant have failed to pay minimum wages for each hour worked;

        (c)     whether Plaintiff and Dancers were required to pay Defendant, in cash, fees for each shift worked;

(d)      whether Defendant improperly retained any portion Plaintiff and Dancers' tips;

(e)      whether Defendant has failed to pay overtime compensation for all hours worked in excess of 40 per workweek;

(f)      whether Plaintiff and members of the Classes are entitled to compensatory damages, and if so, the means of measuring such damages;

(g)      whether Plaintiff and members of the Classes are entitled to restitution; and

(h)      whether Defendant is liable for attorney's fees and costs.

85.      Plaintiff will fairly and adequately protect the interests of the Classes as her interests are in alignment with those of the members of the Classes.  They have no interests adverse to the class they seek to represent, and have retained competent and experienced counsel.

86.      The class action/collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.  The damages suffered by individual members of the Classes may be relatively small when compared to the expense and burden of litigation, making it virtually impossible for members of the Classes to individually seek redress for the wrongs done to them.

87.      Plaintiff and the Classes she seeks to represent have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendant's pay practices.

88.      Defendant has acted willfully and has engaged in a continuing violation of the FLSA and PA State Laws.

**FIRST CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT MINIMUM WAGE VIOLATIONS**
**(On Behalf of the Nationwide Collective Class)**

89.     Plaintiff, on behalf of herself and the Nationwide Collective Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

90.     At all relevant times, Defendant has had gross revenues in excess of $500,000.

91.     At all relevant times, Defendant has been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

92.     At all relevant times, Defendant has employed, and/or continue to employ, Plaintiff and each of the Nationwide Collective Class Members within the meaning of the FLSA.

93.     Pursuant to Defendant's compensation policies, rather than pay Dancers the federally-mandated minimum wage, Defendant improperly classified Plaintiff and other Dancers as independent contractors.

94.     As a result of the Defendant's willful practices, Defendant was not entitled to pay Plaintiff and the members of the Nationwide Collective Class less than the mandated minimum wage for all hours worked.

95.     Defendant has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.* The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

96.     Due to Defendant's FLSA violations, Plaintiff, on behalf of herself and the members of the Nationwide Collective Class, are entitled to recover from the Defendant, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM FOR RELIEF**
**FAIR LABOR STANDARDS ACT OVERTIME WAGE VIOLATIONS**
**(On Behalf of the Nationwide Collective Class)**

97.     Plaintiff, on behalf of herself and the Nationwide Collective Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

98.     At all relevant times, Defendant has had gross revenues in excess of $500,000.

99.     At all relevant times, Defendant has been and continue to be, an employer engaged in interstate commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

100.    At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the Nationwide Collective Class Members within the meaning of the FLSA.

101.    At relevant times in the period encompassed by this Complaint, Defendant has a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek due to Defendant's improper classification of Plaintiff and Dancers as independent contractors.

102.    Defendant has violated and, continues to violate, the FLSA, 29 U.S.C. §§ 201 *et seq.*  The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

103.    Due to Defendant's FLSA violations, Plaintiff, on behalf of herself and the members of the Nationwide Collective Class, are entitled to recover from the Defendant, compensation for unpaid wages; an additional equal amount as liquidated damages; and reasonable attorneys' fees and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

### THIRD CLAIM FOR RELIEF
### PENNSYLVANIA MINIMUM WAGE ACT– MINIMUM WAGE VIOLATIONS
#### (On Behalf of the PA Class)

104.    Plaintiff, on behalf of herself and the members of the PA Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

105.    At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

106.    At relevant times in the period encompassed by this Complaint, Defendant has a willful policy and practice of improperly classifying Plaintiff and Dancers as independent contractors and, consequently, failing to pay these individuals the applicable minimum wage for each hour worked.

107.    Pursuant to Defendant's compensation policies, Defendant improperly classified Dancers as independent contractors rather than pay Plaintiff and Dancers the Pennsylvania minimum wage.

108.    As a result of Defendant's willful practices, Defendant was not entitled to pay Plaintiff and the members of the PA Class less than the Pennsylvania minimum wage for all hours worked.

109.    Defendant has violated and, continues to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

110.    Due to the Defendant's violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendant the amount of unpaid minimum wages, attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
**PENNSYLVANIA MINIMUM WAGE ACT– OVERTIME WAGE VIOLATIONS**
**(On Behalf of the PA Class)**

111.    Plaintiff, on behalf of herself and the members of the PA Class, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

112.    At all relevant times, Defendant has employed, and/or continues to employ, Plaintiff and each of the PA Class Members within the meaning of the PMWA.

113.    At relevant times in the period encompassed by this Complaint, Defendant has a willful policy and practice of refusing to pay premium overtime compensation for all hours worked in excess of 40 hours per workweek.

114.    Pursuant to Defendant's policies and practices of classifying Plaintiff and Dancers as independent contractors, Plaintiff and the members of the PA Class were not paid overtime for all hours worked in excess of forty per week.

115.    Defendant has violated and, continues to violate, the PMWA, 43 Pa. C.S.C. § 333.101 *et seq.*

116.    Due to the Defendant's violations, Plaintiff, on behalf of herself and the members of the PA Class, are entitled to recover from Defendant the amount of unpaid overtime wages, attorneys' fees and costs.

**FIFTH CLAIM FOR RELIEF**
**PENNSYLVANIA WAGE PAYMENT COLLECTION LAW**
**(On Behalf of the PA Class)**

117.    Plaintiff, on behalf of herself and the PA Class Members, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

118.    At all relevant times, Defendants have employed, and/or continue to employ, Plaintiffs and each of the PA Class Members within the meaning of the WPCL.

119.    Pursuant to the WPCL, 43 Pa. S. § 260.1 *et seq.* Plaintiffs and the members of the PA Class were entitled to receive all compensation due and owing to them on their regular payday.

120.    As a result of Defendants' unlawful policies, Plaintiffs and the members of the PA Class have been deprived of compensation due and owing.

121.    Further, due to Defendants' policy of deducting amounts from the tips of Plaintiffs and the PA Class to offset business expenses, Plaintiffs and the PA Class were subject to improper deductions from their compensation.

122.    Plaintiffs, on behalf of themselves and the members of the PA Class, are entitled to recover from Defendants the amount of unpaid compensation, and an additional amount of 25% of the unpaid compensation as liquidated damages.

**SIXTH CLAIM FOR RELIEF**
**PENNSYLVANIA COMMON LAW – UNJUST ENRICHMENT**
**(On Behalf of the PA Class)**

123.    Plaintiff, on behalf of herself and the PA Class Members, reallege and incorporate by reference the paragraphs above as if they were set forth again herein.

124.    Plaintiff and the members of the PA Class were employed by Defendant within the meaning of the PA State Laws.

125.    At all relevant times, Defendant has a willful policy and practice of denying Dancers their full share of gratuities.

126.    During the class period covered by this Complaint, Defendant has a willful policy and practice of having Dancers subsidize Defendant's business expenses by requiring Dancers to

tip certain individuals a required minimum amount.  Further, Defendant has a willful policy and practice of not paying Dancers for appearances at events outside the club.

127.    Moreover, Plaintiff and Dancers were subjected to unlawful deductions from their gratuities.

128.    Defendant retained the benefits of its unlawful deductions from the gratuities from Plaintiff and Dancers under circumstances which rendered it inequitable and unjust for Defendant to retain such benefits.

129.    Defendant was unjustly enriched by subjecting Plaintiff and Dancers to such unlawful deductions.

130.    As direct and proximate result of Defendant's unjust enrichment, Plaintiff and the members of the PA Class have suffered injury and are entitled to reimbursement, restitution and disgorgement from Defendant of the benefits conferred by Plaintiff and the PA Class.

131.    Plaintiff, on behalf of herself and the members of the PA Class, are entitled to reimbursement, restitution and disgorgement of monies received by Defendant.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and/or on behalf of herself and all other similarly situated members of the Nationwide Collective Class and members of the PA Class:

A.    Designation of this action as a collective action on behalf of the Nationwide Collective Class, and prompt issuance of notice pursuant to 29 U.S.C. §216(b), apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b);

B.    Designation of the action as a class action under F.R.C.P. 23 on behalf of the PA Class;

C.      A declaratory judgment that the practices complained of herein are unlawful under the FLSA and PMWA;

D.      An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with it, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

E.      An award of unpaid minimum wages to Plaintiff and the members of the Classes;

F.      An award of unpaid overtime wages to Plaintiff and the members of the Classes;

G.      Restitution of wages and gratuities improperly retained by Defendant;

H.      An award of liquidated damages to Plaintiff and members of the Classes;

I.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees to Plaintiff and members of the Classes; and

J.      Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this complaint.

Dated: May 31, 2013                          Respectfully submitted,

**FARUQI & FARUQI, LLP**


By:*/s/ Gerald D. Wells, III*
        Gerald D. Wells, III
        Robert J. Gray
        101 Greenwood Avenue, Suite 600
        Jenkintown, PA 19046
        Telephone: (215) 277-5770
        Facsimile: (215) 277-5771

**CARLSON LYNCH LTD**
        Gary F. Lynch
        Sunshine R. Fellows

PNC Park
115 Federal Street, Suite 210
Pittsburgh, PA 15212
Telephone: 412-322-9243
Facsimile: 412-231-0246
***Attorneys for Plaintiff***