UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PRIYA VERMA, on behalf of herself and all others similarly situated, <br><br>                    Plaintiff, <br> v. <br><br> 3001 CASTOR, INC., d/b/a/THE PENTHOUSE CLUB and/or THE PENTHOUSE CLUB @ PHILLY; ABCDE PENNSYLVANIA MANAGEMENT, LLC and DOE DEFENDANTS 1-10, <br>                    Defendants. | Civil Action No.: 2:13-cv-03034-AB |

**DEFENDANT 3001 CASTOR, INC.'s MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S MOTION FOR RULE 23 CLASS CERTIFICATION**

Defendant 3001 Castor, Inc., by the undersigned counsel, hereby respectfully responds to Plaintiff Priya Verma's Motion for Rule 23 Class Certification.

**I.**    **Preliminary Statement**

Plaintiff brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* (the "FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §333.10, *et seq.*, the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §260.1, *et seq.* and common law.  Ms. Verma now moves for certification of a Rule 23 Class comprised of:

> All persons who, during the period of May 31, 2010 and continuing through the entry of judgment in this case, performed as a dancer at Defendant's adult entertainment club, in Philadelphia, Pennsylvania.

Plaintiff's motion should be denied for the following reasons:

1.) The FLSA, the PMWA and the WPCL speak to the proper treatment of employees. The members of the class Plaintiff seeks to have certified are independent contractors[1];

---

[1] 3001 Castor Inc. will be filing a motion for summary judgment during the week of March 10th , 2014.  Said motion will present objective evidence, as opposed to Plaintiff's anecdotal arguments,  showing the kind of entrepreneurial conduct which the Honorable Juan Sanchez found in *Spellman v. American Eagle Express, Inc.* 2013 WL 1010444, 20 Wage &

2.) Plaintiff's claim is not typical of the claim she purports the dancers at 3001 Castor Inc.'s restaurant to have;

3.) Plaintiff and Class Counsel cannot fairly and adequately represent the class they assert exists; and

4.) the class period they seek is not in conformity with the law.

II. **Procedural Status of the Litigation and Applicable Law**

On July 2, 2013, in response to Ms. Verma's complaint Defendant 3001 Castor, Inc. (hereinafter "3001 Castor") filed a motion to dismiss on the basis that Plaintiff is not an employee, but rather an independent businesswomen, more commonly referred to as independent contractor. The motion to dismiss was withdrawn by agreement of counsel to conduct discovery to allow the parties to address the question of whether Plaintiff is an employee or independent contractor. This is a threshold question. A determination that a party is either an employee or an independent contractor is a judicial one. *Samson v. Harvey's Lake Borough,* 881 F. Supp. 138, 143 (M.D. Pa. 1995) (citing *Donovan v. Dialamerica Marketing, Inc.* 757 F.2d 1376 (3d. Cir.) *cert. denied,* 474 U.S. 919, 106 S. Ct. 246, 88 L. Ed. 2d 255 (1985).

Accordingly, 3001 Castor will be filing a motion for summary judgment.

By responding to Plaintiff's motion for class certification, 3001 Castor does not waive its position that the dancers are independent contractors.

---

Hour Cas.2d (BNA) 1084. 3001 Castor, Inc. respectfully requests that this Court accept the forthcoming motion for summary judgment as being incorporated into this memorandum by reference.

**III.     Facts**

Plaintiff and her peers are exotic dancers. Each dancer has her own followers, whom she draws to 3001 Castor by letting her "book of business" know, via e-mail, text messaging, facebook, etc., where she is appearing on stage. (*See*, ¶ 5 of the Affidavit of Brandon Silva, hereinafter "Silva Affidavit," attached hereto as Exhibit A.)[2] Dancers are not recruited by 3001 Castor. They work for themselves and move from one venue to another as they please. (¶6, Silva Affidavit)

Dancers rent stage time from 3001 Castor. The stage rental options offered allow each and every dancer to decide for herself what she wants to do. For example, 3001 Castor, to attain a degree of dependability, prefers dancers who will rent stage time for at least four days in a given week. The dancer who does so is referred to as an "Entertainer." The dancer who does not want to make a minimum four day commitment is referred to as a "Freelancer." Entertainers, for their willingness to commit to a minimum of four days, pay a lower stage rental fee than the Freelancer does. (¶7, Silva Affidavit)

As shown of the first page of the 3001 Castor schedule of business hours and rental fees, attached to the Silva Affidavit, each prospective dancer has flexibility and numerous options to choose from when deciding at what time and at what rental fee they want stage time. (¶8, Silva Affidavit) 3001 Castor has five shifts from which a dancer can choose stage time : (a) a "day shift" from 12pm-6pm, (b) a "mid shift" from 3pm - 9pm, (c) a "preferred shift" from 6pm -

---

[2]The facts set forth in the affidavit of Brandon Silva are supported by Mr. Silva's seven hours of deposition testimony on January 22, 2014 and the six hours of deposition testimony of 3001 Castor's corporate designee on January 23, 2014. For the sake of brevity and the forthcoming motion for summary judgment Mr. Silva's affidavit is being used at this time.

12am, (d) a "premium shift" from 8pm - 2am, and (e) a "power shift" from 10pm - 12 am.  The Entertainers pay no stage rental fee for the day, mid or preferred shifts whereas the Freelancer must pay a stage rental fee for all but the day shift.  (Id.)

The Entertainer receives all monies paid to her by her clients/patrons during the six hours she works a day shift, a mid shift or a preferred shift.  3001 Castor receives nothing from the Entertainer in such a case.  (¶9, Silva Affidavit)  The benefit to 3001 Castor comes from the patrons drawn by the dancers and the money spent on food and alcoholic beverages.

When the Entertainer works  a premium shift or a power shift, she  receives all monies paid to her by her clients/patrons during the six hour shift above the single stage rental fee of $35 or $85, respectively.  (*See,* first page of the 3001 Castor schedule of business hours and rental fees, attached to the Silva Affidavit.)  3001 Castor receives nothing more than the stage rental fee for a premium shift or a power shift . (¶10, Silva Affidavit) Again, 3001 Castor benefits from the patrons drawn by the dancers and the money spent on food and alcoholic beverages.

The Freelancer  receives all monies paid to her by her clients/patrons during the six hours she works a day shift.  3001 Castor receives nothing from the Entertainer in such a case.  (¶11, Silva Affidavit)  The benefit to 3001 Castor comes from the patrons drawn by the dancers and the money spent on food and alcoholic beverages.

When the Freelancer works  a mid shift, a preferred shift , a premium shift or a power shift, she  receives all monies paid to her by her clients/patrons during the six hour shift above the single stage rental fee of $35, $60.00, $60.00 or $85, respectively. (*See,* first page of the 3001 Castor schedule of business hours and rental fees, attached to the Silva Affidavit.)  3001 Castor receives only the foregoing stage rental fees. (¶12, Silva Affidavit)  Again, 3001 Castor benefits

from the patrons drawn by the dancers and the money spent on food and alcoholic beverages.

A dancer, regardless of whether she is an Entertainer or a Freelancer, is free to stay past her shift of choice without paying 3001 Castor an additional stage rental fee, and collect 100% of the monies paid to her by her clients/patrons. (*See,* first page of the 3001 Castor schedule of business hours and rental fees, attached to the Silva Affidavit.) (¶13, Silva Affidavit)

A dancer is free to come and go as she pleases. However, to encourage her to utilize her entire shift fines of $10/every 30 minutes late to a shift may be imposed. A dancer at her discretion may take an "Early Out," which is the option leave a shift early for which she will be charged $100. (*See,* first page of the 3001 Castor schedule of business hours and rental fees, attached to the Silva Affidavit.) (¶14, Silva Affidavit)

The dancer has complete artistic freedom. She provides her own music, although the music may not contain lyrics which would be offensive to any religious, racial, or ethnic group. Her attire must be in accordance with the law of the Commonwealth. (¶15, Silva Affidavit)

The dancers utilize the services of a disc jockey, and a "house mom" each of whom is an independent contractor. The dancers have always understood their obligation to pay for the services provided by the DJ, and the "house mom." These two, together with the valet parking (which is not owned or affiliated with 3001 Castor) exist for the safety of both the dancers and patrons. (¶16, Silva Affidavit)

The dancer, at her discretion, may also perform a private dance ("lap dancing") for her clients/patrons in a private room. The dancer has agreed, for her safety and the safety of the patron, to a set $30 charge for each four minutes a lap dance lasts (established fee prevents disputes between dancer and patron), of which a $10 room rental fee is paid to 3001 Castor.

(¶17, Silva Affidavit)

The dancers utilize the services of a "Podium Host" who collects the $30 fee from the client/patron (for the dancer's safety) and is stationed in close proximity to the private room, thereby providing security. (¶18, Silva Affidavit)

IV. <u>Argument</u>

    A.    **Plaintiff As An Independent Contract Does Not Have A Claim**

The FLSA, the PMWA and the WPCL speak to the proper treatment of employees. Plaintiff is an independent contractor and has not established that she has standing to bring an action under any of the foregoing statutes.

On April 16, 2013, the United States Supreme Court, made clear that:

(1) the Plaintiff in an action brought pursuant 29 U.S.C. §216(b) to has to have a sufficient personal stake in the case and

> (2) 'conditional certification' does not produce a class with an independent legal status, or join additional parities to the action. The sole consequence of conditional certification is the sending of court-approved notice to **employees,** see *Hoffmann-La Roche Inc., supra.* at 1717-172, who in turn become parties to a collective action only by filing written written consent with the court, §216(b).

*Genesis Healthcare Corporation, et al v. Symczyk,* 133 S.Ct. 1523, ____ (2013), overruling *Symczyk v. Genesis HealthCare Corp.,* 656 F.3d 189 (3d Cir. 2011). (Emphasis added)

The FLSA pertains to employees. Employees have a sufficient personal stake, not independent contractors. Ergo, the question of whether Plaintiff is an employee or independent contractor is a threshold question. *Samson v. Harvey's Lake Borough, supra.* The burden of proof is upon the moving party - the plaintiff.

Furthermore, the economic reality of Plaintiff's career demonstrates she is an independent contractor.  Her opportunity for profit or loss is solely hers and depends upon the skill with which she moves from one venue to another and develops her clientele. There is no degree of permanence with any of the gentlemen clubs she chooses to appear at. She decides when she works and where she works.  She is not dependant upon the business, be it 3001 Castor Inc., or any of the other five venues she has chosen to appear.   Plaintiff has engaged in and continues to engage in entrepreneurial conduct.

According to her deposition testimony from 2007 through the present, Ms. Verma  has performed at six of Philadelphia gentleman's clubs,  moving from one to another and back again based upon her desire for "bigger club in the city,[3]" or " a change of atmosphere, newer clientele, a club that was closer to my home[4]"  As best as she could recollect she began appearing at the Oakford Inn in 2007 moved that same year to Oasis, from there she went to Cheerleaders during 2008, then in 2009 she was at Christine's, the Penthouse Club for a couple of months, and then on to Risque.  In 2010 Ms. Verma was at Risque and Christine's.  Thereafter she was back and forth between Oasis and Christine's until going to the Penthouse Club for a second time in late 2012 through May of 2013, when she left of her own volition and went to Cheerleaders.  In August of 2013, Ms. Verma began performing once again at Oasis.  (*See,* Ex. B, Dep. Transcript at pages 11, line 10 through page 16, line 9).

---

[3]  Describing move from Oakford Inn in Neshaminy, Pennsylvania in 2007 and moved to the Oasis in Philadelphia. (*See* Ex. B, Dep. Transcript at page 11, lines 19-21; page 17, line 12)

[4] Describing move from Christine's to the Penthouse Club in August 2013. (*See,* Ex. B, Dep. Transcript at page 31, lines 7-9)

When Ms. Verma chose to change her venue she needed, with one exception, to audition, verify her identity and age, and accept the rules and regulations of the venue. Ms. Verma's compensation came from her patrons. (*See,* Ex. B, Dep. Transcript at page 16, line 10 through page 22, line 11).[5]

With the exception of its own rules and regulations, 3001 Castor does not know what rules and regulations Ms. Verma had to comply with at the other venues, because she simply could not remember them. *Id.* Nor does 3001 Castor know about the scheduling procedures at those venues. But at her deposition Ms. Verma acknowledged that she could, and did, determine her own schedule for appearances at the Penthouse Club[6] as described in paragraphs 7-13 of the Affidavit of Brandon Silva.

### B. Plaintiff's Claim Is Not Typical Of The Claim She Purports The Dancers At The Penthouse Club Have

Ms. Verma, as she testified at pages 16 -22, moved freely from one "Gentlemen's Club" to another at her discretion. She also testified that the operation at each club was "essentially" the same. In theory the economic reality of the relationship between the dancers and each of the "Gentlemen's Clubs" where the Plaintiff appeared would be the same and the same cause of action would accrue for all of the dancers at all of the clubs. Yet when Ms. Verma was asked, at page 27, whether she brought an action against (1) the Oakford Inn, (2) the Oasis, (3) Christine's,

---

[5]Ms. Verma, in neither her self executing discovery nor in any other manner, has presented any evidence pertaining to the "economic realities" of the relationship between the alleged employer and employee. *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1293 (3d Cir. 1991).

[6]*See,* Ex. B, Dep. Transcript at page 50, line 1 through page 52, line 18).

(4) Risque, and (5) Cheerleaders, each time she said no. At page 31, lines 10 -15, when asked what prompted her to see an attorney about bringing the instant action Ms. Verma cited disrespect. Disrespect is not a cause of action provided for under the FLSA, or the PMWA, or the WPCL.

As a matter of fact, without waiving the fact that the Plaintiff is an independent contractor, Ms. Verma has neither plead nor provided evidence that, for the hours she appeared at the Penthouse Club she failed to earn Pennsylvania's minimum hourly wage, which is the purview of the FLSA and the PMWA or that she worked overtime without appropriate compensation, which is the purview of the FLSA and the WPCL.

The evidence produced by 3001 Castor shows, *inter alia,* that Ms. Verma never worked a forty hour week.[7] It is also undisputed that Ms. Verma earned $20 per four minutes of private dances. How many of those dances Ms. Verma performed at the Penthouse Club is known only by her. However, for every four minutes of private dance, Ms. Verma earned enough to equal approximately three hours of Pennsylvania's minimum wage.

Given the *absence* of any evidence that Ms. Verma (1) is an employee, (2) she has worked more than forty hours in a given week, or (3) her average hourly earnings were below minimum wage *as well as* the fact that her reason for bringing this lawsuit is that she left disrespect it cannot be said that Plaintiff's claim is typical of the members of the purported class she seeks to represent.

---

[7]Records and statistical analysis of the hours the purported class were present at the Penthouse Club are part of the forthcoming motion for summary judgment and are incorporated herein by reference.

### C. Plaintiff And Class Counsel Cannot Fairly And Adequately Represent the Class They Assert Exists

Members of the purported class are bright individuals. Many are members of a forum for and by exotic dancers, known as Exotic Dancer Net.com ("EDN"). The forum is limited to exotic dancers who must go through a verification process. At Exhibit C to this memorandum are a sample of the topic discussed by EDN's members. The members recognize that they are independent contractors which provides benefits such as privacy[8], and the ability to deal with personnel at the club on your own terms.[9] They also understand the economic impact of Plaintiff's action.

Plaintiff as an independent contractor who performs twenty-four minutes of private dances earns more than the same amount she would earn in two eight hour days at the Pennsylvania minimum wage. This is what members of the EDN had to say about unionization (which is what some people believe is necessary to ensure an hourly rate above the minimum wage) and about class actions such as this one:

"Yeah unionize so some bitch who makes 100 a night while I'm making 1000 will make almost the same after we pool tips! No thanks!"[10]

"Although tip-sharing is the least of the worries for me regarding stripper unions. I'm thinking things like all sales going through the bar and strippers giving up even BIGGER cuts than they already do, resulting in even less take-home potential for all girls is the biggest concern. And yes, I can totally see a bunch of lazy union bitches voting in tip-sharing because let's be honest - the only strippers who are really in favor of unionizing and becoming employees

---

[8] *See,* Exhibit C, pg. 2, entries therein.

[9] *See,* Exhibit C, pg. 5, entries therein.

[10] *See,* Exhibit C, pg.3, entries therein.

are those who make crap and shouldn't be stripping any way."[11]

"I couldn't agree with you post more! I remember about 10 years ago when they were were talking about strip clubs unionizing in Cali they were going to pool tips.  I'm sick of these f***ing strippers too who keep doing these class action suits.  All it does is make the clubs raise house fees and these idiots are getting about 500-1000 and getting blacklisted!  I was working at ricks in Nola with this idiot girl who wsn't making any money and I told her to go to Hustler and she said' oh no I can't I was blacklisted becasue I was involved with thesuit", She got 500 bucks! All the only people the suits benefit are the lawyers!"[12] [stet]

Unlike class actions which address an injury which is transparent to all, there is not a discernable injury in this case.  Plaintiff and her counsel have not taken into consideration the economic reality as seen by the purported class and without doing so they can not be said to be capable of fairly and adequately representing the class they purport exists.

    **D.   The Class Period They Seek Is Not In Conformity With The Law**

The FLSA permits a three year statute of limitations only when a violation that has occurred was intentional, otherwise the statute of limitations is two-years.  As testified to during the deposition of the corporate designee, the use of independent contractors was recommended by legal counsel and a certified public accountant knowledgeable of the law.[13]

---

[11]*Id.*

[12]*Id.*

[13]An affidavit to that effect is part of the forthcoming summary judgment motion.

## V. Conclusion

For all of the foregoing reasons, Plaintiff's motion for class certification should be denied.

Respectfully submitted,

Dated: March 7, 2014

*John F. Innelli, Esquire*
John F. Innelli, Esq.
**JOHN F. INNELLI, LLC**
1818 Market St., Suite 3740
Philadelphia, PA 19103
(267) 238-9884
jinnelli@innellilaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum of Law In Opposition To Plaintiff's Motion For Class Certification Pursuant to Rule 23 was filed and served electronically on all counsel of record, this 7th day of March, 2014.

*John F. Innelli*
John F. Innelli, Esquire