**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

PRIYA VERMA, on behalf of herself and all others similarly situated,
Plaintiff,

v.

3001 CASTOR, INC., d/b/a/THE PENTHOUSE CLUB and/or THE PENTHOUSE CLUB @ PHILLY; ABCDE PENNSYLVANIA MANAGEMENT, LLC and DOE DEFENDANTS 1-10,
Defendants.

Civil Action No.: 2:13-cv-03034-AB

**Defendant 3001 Castor, Inc.'s Motion For Summary Judgment**
**Pursuant to Federal Rule of Civil Procedure 56(b)**

Defendant 3001 Castor, Inc., (hereinafter "3001 Castor"), respectfully moves this Honorable Court to grant summary judgment in its favor and in support thereof states as follows.

## I. Procedural Status of the Litigation - Issue at Hand

Plaintiff brings this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* (the "FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §333.10, *et seq.,* the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 P.S. §260.1, *et seq.* and common law. The FLSA, the PMWA and the WPCL apply to employees.

Plaintiff is an exotic dancer as are those she seeks to represent. Plaintiff claims that she and the dancers at 3001 Castor have been miscategorized as independent contractors. The question of whether Plaintiff is an employee or independent contractor is a threshold question. A determination that a party is either an employee or an independent contractor is a judicial one. *Samson v. Harvey's Lake Borough,* 881 F. Supp. 138, 143 (M.D. Pa. 1995) (citing *Donovan v. Dialamerica Marketing, Inc.* 757 F.2d 1376 (3d. Cir.) *cert. denied,* 474 U.S. 919, 106 S. Ct. 246, 88 L. Ed. 2d 255 (1985). An evidentiary record on the issue has been made.

## II. Legal Standard - For Issue at Hand

To determine whether a Plaintiff is an employee or independent contractor courts have looked to two factors: (a) [in this case] the dancers' ability to control their time in a way that shows entrepreneurial opportunity for financial gain or loss indicative of independent contractor status[1] and (b) whether, as a matter of economic reality, does the dancer depend upon someone else's business for the opportunity to render service or are they in a business for themselves.[2]

## III. Evidence Establishing Dancers As Independent Contractors[3]

During the relevant time period:

- A total of 453 dancers were charted for a period of 763 days
- Not a single dancer rented time slots totaling 40 hours in a given week

---

[1]*See, FedEx Home Delivery v. NLRB,* 563 F.3d 492, 499 (D.C. Cir. 2009) cited by Judge Juan Sanchez in *Spellman v. American Eagle Express, Inc.*,2013 WL 1010444, 20 Wage & Hour Cas.2d (BNA) 1084.

[2]*See, Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1059 (2d Cir. 1988) cited by Judge Juan Sanchez in *Spellman*.

[3]3001 Castor believes it is Plaintiff's burden to establish that she and those she seeks to represent are employees. Indeed, 3001 Castor filed a motion to dismiss based upon this issue. Plaintiff requested, and 3001 Castor agreed to withdraw the motion to dismiss to allow discovery on the issue. In the interim Plaintiff has filed motions seeking Conditional Action Certification and Class Certification neither of which addressed the threshold question of whether the dancers are employees or independent contractors. 3001 Castor views Plaintiff's failure to previously address the threshold question as indica that she will not move the issue before the Court and if the Court's Preferred Procedure on Summary Judgment for those moving under Rule 56(b) were strictly followed what would be presented by Plaintiff in response to an affirmation by 3001 Castor's counsel that there is no legally sufficient evidentiary basis to support Plaintiff's assertion that the dancers are employees would not be helpful to the resolution of the issue. Accordingly, 3001 Castor is deviating slightly from the Court's Preferred Procedure.

The evidence presented comes from a Statistical Data Analysis of the varied number of hours, dates, weeks and seasons during the dancers have rented stage time and private rooms at 3001 Castor. The analysis is set forth in detail in the Affidavit of Joan C. Lenahan and the accompanying appendices.

- Dancers rented time slots at an average of 14 out of an available 109 weeks
- Dancers rented time slots at an average of 14.66 total hours per week
- Dancers performed on stage at an average time equal to 40 minutes of a 6 hour time slot
- Dancers have an average time equal to 5 hours and 20 minutes of a 6 hour time slot to converse with patrons and/or perform private dances or leave if they wish
- Dancers chose the time slots they rented
- Dancers chose the days of the week for which they rented time slots
- Dancers chose the number of time slots per week they rented
- Dancers chose the number of weeks per month they rented
- Dancers were not restricted to a minimum amount of time slots within any given amount of time
- Dancers were not restricted to a maximum amount of time slots within any given amount of time
- Dancers collectively chose to rent time slots at this venue on Wednesdays just as often as time slots on Saturdays, even though Saturdays yield a higher number of clients
- Dancers collectively chose to rent time slots at this venue on Thursdays more than any of the other six days of the week

The dancers, due to having an average time equal to 5 hours and 20 minutes of a 6 hour time slot to converse with patrons and/or perform private dances, have an earning potential of $1600 per time slot.

The earning potential of $1600 per time slot is derived from the following mathematical statistics:

(a)

- the venue utilizes a "stage rotation" where each dancer in turn will perform for one or more songs in a fixed sequence on stage which repeats during the course of a time slot provided the dancer is not otherwise engaged with a customer in a private dance (*see,* Lenahan Affidavit, attached hereto)
- private dances are sold by that dancer to her customers
- the dancer has agreed, for her safety and the safety of the patron, to set the fee for the private dance at $30 per four minutes of dance time
- the rate at which the dancer may rent a private room is $10/four minutes

THEREFORE:

○ the dancer nets $20 for four minutes of private dance

○ the dancer nets $5 per minute of private dance

(b)

- the normal hours of operation for the venue are 12:00 noon to 2:00 am
- the venue may open later than 12:00 noon, however it is not permitted to be open any earlier
- the venue may close earlier than 2:00 am, however it is not permitted to open any later

THEREFORE:

○ 14 hours is the maximum amount of time that the venue is open daily

(c) • there are 60 minutes in 1 hour

THEREFORE:

○ 840 minutes is the maximum amount of time that the venue is open daily

(d) • unrelated statistical studies have proven the average duration of a pop song in the USA between 2008 through 2012 is 3.5 minutes

THEREFORE:

○ the computed maximum number of songs that could possibly be played would be 240, providing that no song is over the average time, that absolutely no time is lost between songs, and that the venue is not operating on a seasonal schedule that would lower the amount of hours it is open

(e) • the average percentage of time the dancer was performing on stage is 11% of a time slot

THEREFORE

○ 89% of the time slot was available for private dance sales

(f) • a six hour time slot equates to 360 minutes

• 89% of a six hour time slot is 320 minutes

THEREFORE

○ a dancer has an earning potential of $1600 per time slot .

## IV Analysis

The dancers have the ability to control their time in a way that shows entrepreneurial opportunity for financial gain or loss indicative of independent contractor status. As set forth above, they choose the days for which they rent time slots - choosing Thursday over all other days, and Wednesday as often as Saturday. They choose the weeks they want to appear at the venue; they choose both the number of time slots per week and the actual time slots they want to rent. In so doing, not a single dancer over a 109 week period of time, rented time slots totaling 40 hours in a given week. In addition the dancers have complete control over how they utilize the time they have - an average time equal to 5 hours and 20 minutes of a 6 hour time slot - to converse with patrons and/or perform private dances. As set forth above, given the fact that (a) the dancer nets $5 per minute of private dance and (b) on average they have 320 minutes of a time slot available to perform private dances if they so choose, the dancer has an earning potential of $1600 per time slot.

As a matter of economic reality, the dancer does not depend upon someone else's business for the opportunity to render service, they are in a business for themselves. First and foremost is the fact that not a single dancer rented time slots totaling 40 hours in a given week. The spreadsheets, column charts, and time charts set forth a Appendices 3-1 thorough 3-5, show the varied nature of when dancers choose to rent time slots at 3001 Castor, Inc. Such a variation is at odds with a business which would staff employees and schedule the employees in a manner which would maximize the employers' revenue. Further evidence of this fact is the leverage the dancers had over rental rates for various time slots. As set forth in the affidavit of Brandon Silva, it is revealed that 3001 Castor, Inc. had to offer 60% of the time slots for stage rental for free.

**V. Request**

Based upon the foregoing evidence, the undersigned counsel believes there is no legally sufficient evidentiary basis to support the Plaintiff's assertion that she and the dancers she seeks to represent have been miscategorized as independent contractors. There is no genuine issue as to the status of the dancers as independent contractors. Consequently, the Plaintiff has no cause of action.

Accordingly, 3001 Castor request judgment as provided in Federal Rule of Civil Procedure 56 (c).

Dated: April 5, 2014

Respectfully submitted,

*John F. Innelli*

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Motion For Summary Judgment was filed and served electronically on all counsel of record, this 5th day of April, 2014.

*John F. Innelli*
John F. Innelli, Esquire