UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| PRIYA VERMA ON BEHALF OF | ) | 13-CV-03034 |
| HERSELF AND ALL OTHERS | ) | |
| SIMILARLY SITUATED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| 3001 CASTOR, et al, | ) | Philadelphia, PA |
| | ) | March 15, 2018 |
| Defendants. | ) | 2:43 p.m. |


TRANSCRIPT OF PRETRIAL TELEPHONE CONFERENCE
BEFORE THE HONORABLE ANITA B. BRODY
UNITED STATES DISTRICT JUDGE



APPEARANCES:

For the Plaintiff:            GERALD D. WELLS, III, ESQUIRE
                             CONNOLLY WELLS & GRAY, LLP
                             2200 Renaissance Blvd
                             Suite 275
                             King of Prussia, PA  19406


For the Defendant:           JOHN F. INNELLI, ESQUIRE
                             JOHN F. INNELLI, LLC
                             Two Penn Center
                             Suite 1300
                             Philadelphia, PA  19102

Audio Operator:              JAMES F.G. SCHEIDT


Transcribed by:              DIANA DOMAN TRANSCRIBING, LLC
                             P.O. Box 129
                             Gibbsboro, New Jersey  08026
                             Office:  (856) 435-7172
                             Fax:     (856) 435-7124
                             Email:   dianadoman@comcast.net


Proceedings recorded by electronic sound recording, transcript produced by transcription service.

1                        I N D E X

2

3        COLLOQUY:                                      PAGE

4        Re:   Charging of Wage Act                       3

5        Re:   Number reached on FLSA case                4

6        Re:   Pretrial discussion                        9

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Colloquy                                                                        3

1           (The following was heard at 2:53 p.m.)

2           COURTROOM DEPUTY:  On the record now, Your Honor.

3           THE COURT:  -- since I did ask for it.  Tell me what

4    your objection is to the Wage Act.

5           MR. INNELLI:  Well, as we set forth in our -- in our

6    motion to dismiss, which we submitted to the Court, EFC Number

7    155, Your Honor -- I don't have it at my fingertips right now,

8    and the motion to dismiss, Count Six, which is the unjust

9    enrichment is that --

10          THE COURT:  Are you going to object to my charging

11   -- are you going to object to my charging the Wage Act?

12          MR. INNELLI:  Am I going to object to your charges

13   on the Wage Act?

14          THE COURT:  No, are you going to object to my

15   present -- allowing the Wage Act to -- are you going to object

16   to the Wage Act as being an issue as you did in your -- in

17   your 12(b) -- inappropriate 12(b)(6)?  I said you could take

18   this up at trial.  Are you going to object to that --

19          MR. INNELLI:  Right.

20          THE COURT:  -- to that count at trial?

21          MR. INNELLI:  Yes, Your Honor.

22          THE COURT:  All right.  And do you know the reasons

23   why at this point?

24          MR. INNELLI:  They're -- they're stated in my brief.

25   I don't have the brief at my fingertips right now.

1        THE COURT:  Okay.  All right.  And you're going to

2   object to the -- also to the --

3        MR. INNELLI:  Wage Collection Act --

4        THE COURT:  -- Wage Collection Act?

5        MR. INNELLI:  -- Payment and Collection --

6        THE COURT:  All right, Mr. Wells, do you want me to

7   discuss these pretrial or do you want me to discuss these

8   after you present your case?

9        MR. WELLS:  Your Honor, we can discuss these after

10  we present our case to you.

11       THE COURT:  Okay.  All right.  Okay.  All right.

12  And so -- and you'll be prepared, Mr. Innelli, to argue on it.

13  You know, I assume that you'll ask for dismissal of those at

14  -- after the plaintiff's case, is that correct?

15       MR. INNELLI:  Yes.  Yes, Your Honor.

16       THE COURT:  All right.  Okay.  All right, you be

17  prepared to argue it, okay?

18       MR. WELLS:  Yes, Your Honor.

19       THE COURT:  Okay.  All right.  Thank you.  Also, as

20  far as the FLSA case and the number that you've reached on the

21  FSLA (sic) case, I assume that we don't have to tell them

22  anything about it and that I will simply subtract whatever

23  you've agreed to from the verdict, if any, in the -- in the

24  wage case.

25       MR. WELLS:  Your Honor, per the agreement, it will

1    only go to the interest of the liquidated damages issue which

2    will be raised at the trial so it would not have any affect

3    with respect to the minimum wage damages under Pennsylvania

4    law.

5              THE COURT:  Say that again?

6              MR. WELLS:  Yes, Your Honor, to state it

7    differently, there will not be any offset for this settlement

8    with respect to the jury verdict as the jury verdict will

9    address the minimum wage counts under State law as well as

10   tip-out claims.

11             The settlement is for the liquidated damages that we

12   talked about at the final pretrial conference which was in

13   Title II under the FLSA but not under State law for that

14   additional percentage and that will be resolved.  We've

15   effectively streamlined it so the jury will only have to

16   address the total number of hours worked, the total shifts

17   worked and how much wages and tip-outs are due.

18             THE COURT:  Oh, so you --

19             MR. WELLS: So we won't --

20             THE COURT:  So you won't have any wages in your --

21   you don't have any wages in your agreement, is that correct?

22             MR. WELLS:  Correct, Your Honor, but there will be a

23   dismissal of the FLSA claim --

24             THE COURT:  Yes, of course.

25             MR. WELLS:  -- but there won't be any -- there won't

1   be any setoff as to the -- the jury verdict for the State

2   claim.

3            THE COURT:  Is that correct, Mr. -- Mr. Innelli?

4            MR. INNELLI:  Your Honor, this is my understanding

5   and how I -- how I understand it.  What I did is take the 22

6   opt-ins of Ms. Verma and with that three years as the Court

7   suggested, added up all the hours they had, multiplied it by

8   $7.25 per hour and then doubled that.

9            That's liquidated damages from our perspective.  I

10  think that's all that the -- the opt-outs are entitled to.

11  That is an issue that is in dispute.  I think we argue that

12  after the case in chief as reported by the plaintiff.

13           THE COURT:  No, I want to know what you -- I want to

14  know what your agreement is.  You told me that, as I

15  understand it, Mr. Lynch (sic) doesn't think that that

16  agreement -- that agreement has anything to do with what's

17  going to happen on Monday, is that correct, Mr. Lynch (sic)?

18           MR. WELLS:  Your Honor --

19           THE COURT:  Mr. Wells I mean, I'm sorry.

20           MR. WELLS:  Yes, yes, Your Honor, it has -- it has

21  no bearing on the trial on Monday.

22           THE COURT:  So we don't -- you settled that and

23  that's finished and then I try the case on Monday and there

24  are no setoffs or anything else, is that correct?

25           MR. WELLS:  Yes, Your Honor.

Colloquy                                                          7

1              THE COURT:  And is that what you understand, Mr.

2       Innelli?

3              MR. INNELLI:  Your Honor, can I hear what you said

4       again?  I'm having difficulty hearing.

5              THE COURT:  Oh, okay.  What I said was that as far

6       as you both have agreed that, as I understand it, that that's

7       your -- your separate agreement is for how much -- how much is

8       it for?

9              MR. WELLS:  $109,000.

10             MR. INNELLI:  $109,000.

11             THE COURT:  Okay.  And that just stays 109,000?  We

12      don't care what happens on Monday, Tuesday or Wednesday of

13      next week in the case in the State Court claim, is that

14      correct?

15             MR. INNELLI:  That's correct, Your Honor.

16             MR. WELLS:  Yeah.

17             THE COURT:  Okay.  So I don't have to worry about

18      it.  Okay, that's just --

19             MR. INNELLI:  And, Your Honor, it is my -- it is my

20      understanding that one can't double-dip, they can't get paid

21      twice and that's why I say that's an issue that will be paid

22      with the Court after the case in chief has been put -- put in.

23             THE COURT:  Well, then you'd better decide it --

24             MR. INNELLI:  (Inaudible).

25             THE COURT:  One second.  I think I'm -- you may be

1   putting me in a position of having to try both cases.  That

2   sounds to me like there isn't any settlement.  I'm sorry, it

3   sounds to me --

4           MR. INNELLI:  Well, Your Honor --

5           MR. WELLS:  And, Your Honor, if that's the case, I

6   need to know that now because I've focused on the agreement

7   that we've discussed and we have been working and tapering and

8   memorializing.  So I agree -- I concur with the Court if

9   plaintiff's counsel thinks there is no agreement, we need to

10  know this now so we can try the entire case.

11          MR. INNELLI:  This comes down to a question that has

12  not been raised or addressed before and that is whether a

13  plaintiff or plaintiffs can receive compensation in wages

14  under the FLSA and under the Minimum Wage Act.

15          THE COURT:  Well, I think that there's also a

16  question of the liquidated damages, whether they -- they

17  probably shouldn't be deducted.  But half of them -- half of

18  it might be deducted.  I mean, you get -- you get the whole

19  thing no matter what happens, Mr. Lynch (sic) -- I mean, I'm

20  sorry, Mr. Wells, you get the whole thing.  It doesn't matter.

21  It does -- but --

22          MR. INNELLI: But he -- they're -- they're getting

23  the liquidated damages for the FLSA --

24          THE COURT:  And that's all it is and so that FLSA,

25  that is all liquidated damages, is that correct, Mr. Wells?

1    It's all liquidated damages, so basically it doesn't affect

2    what's going to happen on Monday if it's all liquidated

3    damages?

4            MR. WELLS:  Correct, Your Honor.

5            THE COURT:  Oh, okay.

6            MR. WELLS:  That's absolutely correct.

7            THE COURT:  Is that understood, Mr. --

8            MR. INNELLI:  Yes.

9            THE COURT:  -- Mr. Innelli, so we don't -- it's all

10   finished.  All that is is liquidated damages so now we -- and

11   you're not -- and you're withdrawing the overtime, is that

12   correct, Mr. Wells?

13           MR. WELLS:  Yes, Your Honor.

14           THE COURT:  All right, so it's only a matter of the

15   minimum wage.

16           MR. WELLS:  Minimum wage and the tip-outs, WPCL

17   (inaudible).

18           THE COURT:  Okay.  All right.  Okay.  And I'll have

19   the -- and apparently, and I allowed this, that he could raise

20   at trial the issue of the -- of the unjust -- of the Wage Act,

21   okay?  One second.

22           MR. WELLS:  Yes, Your Honor.

23       (Pause -- the Court discusses issue with law clerk)

24           THE COURT:  Minimum wage -- no, the minimum wage --

25   they're getting the -- sure, he's going to get the minimum

1    wage under -- under the Minimum Wage Act of the State.

2              MR. WELLS:  Yes, Your Honor, under the Minimum Wage

3    Act.

4              THE COURT:  And are you asking -- well, you can't

5    get both.

6              LAW CLERK:  No.

7              THE COURT:  You can't get under both.  You can

8    either get it under the --

9              LAW CLERK:  Well --

10             THE COURT:  One second.  I think -- I'd like one

11   second to discuss this with my law clerk because I may be

12   misunderstanding, okay?  Hold the wire.

13             MR. WELLS:  Yes, Your Honor.

14        (Off the record)

15             COURTROOM DEPUTY:  -- Your Honor.

16             THE COURT:  And so I -- Mr. Wells, of course you

17   know -- realize that there is a possibility that I might knock

18   out the -- I wanted to make sure I knew labels of the act, the

19   WPCL.  I might decide, I don't know yet, that that is not a

20   legitimate claim.  You are asking for minimum wage under the

21   PMW -- Pennsylvania Minimum Wage Act -- PMWA, isn't that

22   correct?

23             MR. WELLS:  Yes, Your Honor.  We're asking for --

24   we're asking for minimum wage under the Pennsylvania Minimum

25   Wage Act.  And then under the WPCL, the Wage Payment

1    Collection Law, our claim is defendant did not pay minimum

2    wage and therefore -- and is required then to pay deductions,

3    the mandatory tip-out.  So they are owed reimbursement for the

4    mandatory tip-out and liquidated damages under Pennsylvania

5    law of 25 percent for the minimum wage payments not made.

6              THE COURT:  Okay.  But you go also -- you also --

7    okay, but you also are going to have -- you still have claims

8    under the PM -- under the Pennsylvania Minimum Wage Act, isn't

9    that correct?

10             MR. WELLS:  Yes, we still have a claim under the

11   Pennsylvania Minimum Wage Act and that will be addressed at

12   trial on Monday.

13             THE COURT:  Okay.

14             MR. WELLS: The Pennsylvania Minimum Wage Act, the

15   Wage Payment Collection Law and unjust enrichment,

16   notwithstanding defendant's forthcoming motion on Counts 5 and

17   6 which we'll address after our case in chief has been

18   presented.

19             THE COURT:  Okay.  That sounds to me like we've got

20   it.  Mr. Innelli, you understand that, don't you?

21             MR. INNELLI:  Either way I calculated the settlement

22   agreement amount and that's what I -- my client is obligated

23   to pay.

24             THE COURT:  I don't know what you -- I don't know

25   what that means, but that's under the -- that's under the

 1  FLS --

 2              MR. INNELLI:  (Inaudible).

 3              THE COURT:  That -- I have no idea what that means,

 4  but I understand that you have -- that you stipulated to -- or

 5  let's -- I'm not going to say it, it's unfair.  Mr. Wells,

 6  tell me what you believe you stipulated to under the -- under

 7  the Federal law.

 8              MR. WELLS:  Yes, the two Federal claims of the FLSA

 9  minimum wage and the FLSA overtime claims are effective -- are

10  being dismissed pursuant to the settlement.  In addition,

11  plaintiff is not proceeding with the overtime claim under

12  State law.

13              THE COURT:  No, I want to know only the Federal

14  claims now.

15              MR. WELLS:  Okay, I'm sorry.  Then under the Federal

16  law we -- the Federal claims are settled and -- and dismissed.

17              THE COURT:  Yes, but what are you settling?  What is

18  that number of 109,000?  That is just one part of the minimum

19  wage -- that's not the minimum wage, that is liquidated

20  damages, isn't that correct?

21              MR. WELLS:  Yes.  Yes, Your Honor, I'm sorry, I

22  apologize.  Yes.  We are settling the liquidated damages.

23              THE COURT:  All right.  And that's what you've

24  agreed to, Mr. Innelli and that's all and then --

25              MR. INNELLI:  Yes, Your Honor.

1           THE COURT:  Okay, good.  All right, I think we've

2    got it all straight and so I will -- I'm concerned about my

3    charge, I will charge on the Pennsylvania Minimum Wage Act,

4    okay?  All right, you'd better hang around because we get --

5    when we get to having to -- because you got copies, didn't

6    you, of my proposal, my proposed --

7           MR. WELLS:  Of the jury charge?

8           THE COURT:  Yes.

9           MR. WELLS:  We did, Your Honor.

10          MR. INNELLI:  Yes, --

11          THE COURT:  All right.

12          MR. INNELLI:  -- we did.

13          THE COURT:  Okay.  And so during the trial I'm going

14   to -- I'm going to have a charging conference.

15          MR. WELLS:  Very good.  Your Honor, would it be

16   beneficial for the parties to meet and confer and propose

17   changes to your -- to your jury charge with the rest of the

18   issues that we resolved through settlement?

19          THE COURT:  Well, that would be wonderful if you're

20   willing to do it.  That would be great.  Could you do it, Mr.

21   Innelli?

22          MR. INNELLI:  Yes, we can do that.

23          THE COURT:  Okay.  I mean, because I know you're

24   preparing for trial and I understand that.  Okay.  All right.

25   You'll try and we'll try and then we'll see what happens,

1    okay?

2              MR. INNELLI:  Yes, Your Honor.  Thank you.

3              MR. WELLS:  And, Your Honor, one last question from

4    plaintiff.  With respect to exhibit issues at trial, two

5    courtesy copies are being provided to the Court prior to

6    trial, is that correct?

7              THE COURT:  That's correct.

8              MR. WELLS:  Very good.  Thank you --

9              THE COURT:  You know, the only thing --

10             MR. WELLS:  -- Your Honor.

11             THE COURT:  -- the only thing as I understand it is

12   going to be that chart.  Is there anything else?

13             MR. WELLS:  Your Honor, it will be the house rules

14   and one other exhibit from plaintiff.  It would be a total of

15   approximately 15 pages or so.  We are preparing them now and

16   we will be providing them to the Court before Monday.

17             THE COURT:  Okay.  And how about you, Mr. Innelli?

18   What do you think you're going to be presenting?

19             MR. INNELLI:  There will be a number of printouts

20   that have been introduced in the case during discovery through

21   depositions and submissions of various motions -- motions for

22   summary judgment and all that were filed, so the documents are

23   ones which are known to the parties.

24             We'll be making copies of those and using those in

25   examination of the expert witness that the plaintiffs have and

1    in demonstrating what we believe the damages are -- our

2    calculation of damages.

3                THE COURT:  And have you given that to -- have you

4    given that to plaintiff's counsel?

5                MR. INNELLI:  I believe he already has it in the

6    productions that have taken place -- have taken place in the

7    past.  It's easy enough for us to make another copy for --

8                THE COURT:  Yes, why don't you --

9                MR. INNELLI:  -- him if they need --

10               THE COURT:  -- why don't you send them to him, okay,

11   so we all know what.

12               MR. INNELLI:  I will.

13               THE COURT:  And you and he -- you have his expert's

14   report, you know, expert's report and the --

15               MR. INNELLI:  I do.

16               THE COURT:  Okay.  Okay, I think that it all sounds

17   right and I -- that would be lovely if you could agree on the

18   -- on the proposed charge, okay?

19               MR. WELLS:  Very good.  Thank you, Your Honor.

20               MR. INNELLI:  Thank you, Your Honor.

21               (Matter concluded, 3:11 p.m.)

22                                   * * *

23

24

25

**C E R T I F I C A T I O N**

I, Diane Gallagher, court approved transcribers, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____          _____

DIANE GALLAGHER                          DATE

DIANA DOMAN TRANSCRIBING, LLC